22 So.2d 417

### CAUDLE v. BIRMINGHAM ELECTRIC CO.

#### 6 Div. 82.

Supreme Court of Alabama.

May 31, 1945.

Wm. Dowdell Denson, of Birmingham, for appellant.

35

36

Lange, Simpson, Brantley & Robinson, of Birmingham, for appellee.

STAKELY, Justice.

This action was brought by the appellant against the appellee under the Homicide Act (§ 123, Title 7, Code of 1940) for the wrongful death of appellant's son, Henry Arnold Caudle. The case was tried on one count of the complaint which charged simple negligence and the defendant's general denial of the allegations of the complaint under the plea of the general issue. Trial of the case before the jury resulted in a verdict for the defendant. Hence this appeal.

On February 18, 1940, at about 12:53 a. m. the defendant was operating its street car No. 523, going eastward on Third Avenue, West, in the City of Birmingham, Alabama, when the street car was run into from behind by an automobile. At the time of the collision the street car had just passed over 12th Street and had traveled about 100 feet east of the east curb line of 12th Street, if extended, when it was overtaken and struck from behind by the automobile. At the time of the accident it was raining hard, visibility was poor, and the wind was blowing.

Appellant's intestate was riding as a guest in the automobile which struck the street car in the rear. As a result of the crash appellant's intestate was killed and the driver of the automobile, J. D. Williams, was seriously injured. After the collision the car was not moved again until it was moved by a wrecking crew and after the injured men had been removed from the scene of the accident and the police officers had made their investigation. Prior to the collision the operator of the street car did not know of the approach of the automobile, had not seen it, and was not advised in any way of its presence until it hit the street car. From the time the street car crossed 12th Street and moved up Third Avenue until the automobile ran into the street car, there were no vehicles or obstructions of any kind which closed any part of Third Avenue on either side of the street car. The way was open for the passage of vehicular traffic between the street car as it moved eastward on its tracks and the right-hand curb of the street. At the time of the collision the lights of the street car on the inside were burning and the headlights of the street car were burning. The back trucks of the street car were knocked off the track as a result of the collision. After the collision the automobile rested near the rear end of the street

car with its front end pointing northeast and there was no damage to the front end of the automobile. Damage to the automobile, which was great, according to a photograph introduced in evidence, started at the rear at the right fender and was on the right side.

Charles C. Bennett, witness for the plaintiff, testified in substance that he boarded the street car at Fairview and when the street car reached 12th Street, he was the only passenger. It was raining hard and the motorman pulled on across 12th Street and stopped east of 12th Street so as to let him get off so he could get inside the awning of a fruit stand out of the rain. This fruit stand was on the north side of Third Avenue east of the northeast corner. When the car stopped he got off at the front door and walked across the front of the car. Before he stepped out he looked back behind him and did not see anything coming. When he had taken about four steps and had gotten around to the left-hand front corner of the street car the collision took place.

According to the motorman, who was a witness for the defendant, as the street car approached 12th Street, Bennett came up to the front of the street car and told him that he wanted to get off at 12th Street. He was the only passenger. The motorman stopped the street car before any part of it reached 12th Street and let him off at the front door of the street car. He walked across the front of the street car going in a northerly direction and when he had cleared the path of the street car the motorman proceeded on his way toward downtown Birmingham. After the street car had completely crossed 12th Street and had gone about 100 feet beyond 12th Street, the automobile containing the intestate ran into the rear end of the street car, while the street car was in motion. As the street car approached the east curb of 12th Street, an old model car came out of a filling station on the left. When the motorman saw that car moving across, he cut the current off but did not come to a stop. When that car moved on he gave the street car half current and gained a little speed. After he then gave the street car more current, the collision occurred.

J. D. Williams, a witness for the plaintiff and the driver of the automobile which collided with defendant's street car, testified that it was raining hard on the occasion of the accident; that he was halfway from the middle of the block to the intersection of 12th Street when he first saw the street car and it was going about 30 miles an hour; that when he reached the intersection he slowed down and started across the intersection; that as he got from under the street light, the street car was in the act of stopping and after it stopped, the front doors flew open and he threw on his brakes and the automobile went into a skid; that he did not remember whether it struck the street car, that he was knocked unconscious and that he woke up in a hospital. According to his judgment the automobile was about 60 feet from the street car at the time he applied his brakes when he saw the doors fly open. He further testified that the automobile was traveling about 30 miles an hour and that he had the windshield wiper working on the automobile; that he had the lights of the car on and could see one-half block ahead fairly well; that he did not see anything come out of the door of the street car and that he saw the front doors of the street car on the right-hand side open—they opened out about one foot from the side of the car.

Car No. 523 was brought to a place adjacent to the court house for inspection by the jury. The front doors of the street car, which were the only doors opened on the occasion when Mr. Bennett got off the car, operated with a valve which causes the door panels to fold inside the street car. No part of the doors folds outside of the car. They fold inside.

At the time of the accident there was in force in the City of Birmingham the following ordinance: "It shall be the duty of motormen and conductors on street cars to stop for the reception and discharge of passengers only upon the near side of, and before entering, an intersection street."

Assignments of error are based on (I) exceptions to the oral charge of the court, (II) rulings on written charges, (III) rulings on the evidence, and (IV) the action of the court in overruling a motion for a new trial.

I. Exception was taken to parts of the oral charge. In its oral charge the court made no mention of concurrent negligence. Accordingly it is insisted that the court was in error in charging that the jury must find that the negligence of the motorman was "the proximate cause" before the plaintiff was entitled to recover. It is pointed out that the inquiry which should have been submitted to the jury was in

effect whether the conduct of the motor-man concurred or coalesced with the conduct of the driver of the automobile to produce the collision and not whether the conduct of the motorman was "the proximate cause" of the collision.

This court recognizes the principle of concurrent negligence. Aplin v. Dean, 231 Ala. 320, 164 So. 737; Chambers v. Cox, 222 Ala. 1, 130 So. 416; Watt v. Combs, 244 Ala. 31, 12 So.2d 189, 145 A.L.R. 667. In this connection this court has said:

"Counsel for appellant insists that the rule enunciated in the case of Garrett v. L. & N. R. Co., 196 Ala. 52, 71 So. 685, 686, is applicable to the facts of this case as they apply to the appellant. The rule there stated is as follows: 'The law, in its practical administration in cases of this kind, regards only proximate or immediate, and not remote, causes, and, in ascertaining which is proximate and which remote, refuses to indulge in metaphysical niceties. Where, in the sequence of events between the original default and the final mischief, an entirely independent and unrelated cause intervenes, and is of itself sufficient to stand as the cause of the mischief, the second cause is ordinarily regarded as the proximate cause and the other as the remote cause.'

"We do not think the above quoted rule here controlling for the reason that it is equally well settled in this jurisdiction that if one is guilty of negligence and this negligence concurred or coalesced with the negligence of another, and the two combine to produce a given result, each is liable for the damages, and the negligence of each will be deemed the proximate cause of the injury producing the damages." Watt v. Combs, supra, 244 Ala. 31 at page 37, 12 So.2d 189, 195, 145 A.L.R. 667.

This court has said: "If damage has resulted directly from concurrent, wrongful acts of two persons, each of them may be counted on as the proximate cause, and the parties held responsible jointly or severally for the cause." Hall v. Seaboard Air Line R. Co., 211 Ala. 602, 100 So. 890, 891. See also Home Telephone Co. v. Fields, 150 Ala. 306, 314, 43 So. 711; Aplin v. Dean, supra; Alabama Power Co. v. Bass, 218 Ala. 586, 119 So. 625, 63 A.L.R. 1.

Since under our cases the negligence, if any, of either the motorman or the driver of the car may be regarded as the proximate cause, the most of which appellant can complain is that the court omitted to charge

on one conceivable theory of negligence, with the result that the charge was misleading. In addition to what our cases have said, we do not think that because the court used the expression "the proximate cause" instead of "a proximate cause," the matter is of any moment. The court makes it clear in its own words that when it speaks of "the proximate cause" it means "that the injury or death must follow a natural and probable sequence from the negligence unbroken by any intervening, efficient cause, so that, but for the negligence complained of the injury or death would not have occurred." In other words, the court is not drawing a distinction between one proximate cause as being more important than another proximate cause, but is using the words "the proximate cause" in contradistinction to "remote cause."

It was certainly the duty of the court to charge the jury in respect of the law if they should find a situation of negligence and single proximate cause. Under the evidence they might have thought this the case. Under the evidence they might have considered that violation of the city ordinance by the motorman by wrongfully stopping the car at a place not allowed, was the sole proximate cause of the collision. It should be kept in mind that the suit here is only against the street car company and is based on the alleged negligence of its agents or servants.

The court will not be put in error where it states the law correctly but fails to instruct the jury upon a contention that some of the evidence may tend to support. The remedy where such is the situation is to ask for an explanatory charge, something which the appellant failed to do. Perkerson v. Snodgrass, 85 Ala. 137, 4 So. 752; Forst v. Leonard, 116 Ala. 82, 22 So. 481; Tennessee Coal, Iron & R. Co. v. Williamson, 164 Ala. 54, 51 So. 144; Lewis v. Martin, 210 Ala. 401, 417, 98 So. 635; Alabama Great So. R. R. Co. v. Smith, 178 Ala. 613, 59 So. 464; 53 Am.Jur. 414, § 513.

II. There was no error on the part of the court in refusing to give written charges X, Y and Z requested by the plaintiff. It is sufficient to give one reason applicable to all these charges to sustain the trial court. It is true that there was no issue of contributory negligence in the case, but under the general issue the defendant could show not only that the acts of the

motorman were not the cause of the collision, but in order to show that the acts of the motorman were not the cause, could show that the acts of the driver of the automobile were the cause.

"Defendant may also show under the general issue that the injury was caused by the negligence of a third person, for whom he was not responsible * * *." 45 C. J. 1141.

■■ There was evidence tending to show that the motorman stopped the street car at the intersection of 12th Street and Third Avenue, where the passenger Bennett got off the street car. There was evidence tending further to show that after crossing 12th Street the motorman did not stop the street car and it was struck from the rear by the automobile while the street car was in motion. There was evidence further, tending to show that the street car was struck with such force as to derail the rear trucks of the street car and severely damage the automobile. The evidence further tended to show what the automobile was driven on the street car tracks when the remainder of the street was open for traffic. There was no evidence to show that the motorman was in any way aware of the presence of the automobile to the rear of the street car. Under the foregoing proof, the jury clearly had the right to find that the acts of the driver of the automobile were the sole proximate cause of the collision and the motorman was not guilty of negligence. Accordingly, evidence of the odor of alcohol, drinking or intoxication in the automobile would be circumstances to be considered by the jury in support of this view of the case. See Moore v. Cruit, 238 Ala. 414, 191 So. 252; Southern R. Co. v. Lambert, 230 Ala. 162, 160 So. 262.

■ There was no error in giving written charge X requested by the defendant.

"Though the complaint for injury to plaintiff claims no damage to his motorcycle, on which he was run down, evidence of the destructive effect on it of the collision is admissible on the controverted issues as to the circumstances of the collision." Stoudemire v. Davis, 208 Ala. 495, 94 So. 498.

■ There was no error in refusing charges c and d. Grauer v. Alabama Great So. R. Co., 209 Ala. 568, 96 So. 915; Sloss-Sheffield Steel & Iron Co. v. Willingham, 243 Ala. 352, 10 So.2d 19, 22; Kelly v. Hanwick, 228 Ala. 336, 344, 158 So. 269.

We have carefully considered assignments of error not covered by the foregoing and in them find no merit.

Affirmed.

GARDNER, C. J., and THOMAS and FOSTER, JJ., concur.